876 F.2d 104
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lorraine E. NIELSEN, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant-Appellee.
 No. 88-1828.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1989.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Lorraine Nielsen appeals from the summary judgment entered in favor of defendant-appellee Ford Motor Company ("Ford") in this Title VII action. For the reasons that follow, we affirm.
 
 I.
 
 2
 This appeal involves the last two of three Title VII complaints filed by Nielsen against Ford. Nielsen's first Title VII action against Ford was filed on December 22, 1982. She alleged that Ford discriminated against her on the basis of her sex in failing to promote her, in the reclassification of her employment position in 1981 from an engineering classification salary grade 6 to the nonengineering classification of administrative coordinator salary grade 6, and for failing to give her equal opportunity for overtime.
 
 
 3
 In an opinion issued from the bench in August 1985, the district court dismissed the action, concluding that Nielsen failed to establish a prima facie case of discrimination and, alternatively, that even if she had established a prima facie case, she had failed to overcome as pretextual Ford's business reasons for not promoting her and for changing her classification. This court affirmed in an unpublished opinion filed February 19, 1987.
 
 
 4
 While the first complaint was pending in the district court, Nielsen filed two more complaints on July 19, 1985, which contained many of the same allegations as were contained in the first complaint then pending before the district court. Although Nielsen's motion to consolidate all three complaints was denied, the district court consolidated the second and third complaints on September 17, 1985. In these complaints, Nielsen alleges that Ford is liable for (1) initially reclassifying her from a grade 6 engineering position to administrative coordinator grade 6; (2) the continuing discrimination in its failure to promote her to a grade 7 level engineering position or not reclassifying her back to an engineering position; (3) failing to give her overtime; and (4) retaliating against her for the filing of the first complaint. Generally, Nielsen alleges that seven males were promoted into grade 7 engineering positions in preference to her. She contends that she was told she would not be considered for these positions because she did not have a college degree, yet she alleges that many of the males promoted ahead of her also did not have college degrees.
 
 
 5
 On March 31, 1987, Ford filed a motion for summary judgment, asserting that Nielsen's claim should be dismissed because several of her discrimination claims were barred by res judicata or collateral estoppel, and that the other claims did not raise a genuine issue of material fact. A United States magistrate subsequently recommended that Ford's motion be granted in its entirety. However, following a hearing on Nielsen's objections, the district court denied the motion without prejudice with respect to Nielsen's claim of discriminatory failure to promote or classify her into a position with an engineering classification, but granted the remainder of the motion thereby dismissing Nielsen's other claims.
 
 
 6
 On March 25, 1988, Ford filed a renewed motion for summary judgment with respect to the remaining claim. In granting summary judgment on July 18, 1988, the district court held, after considering all the job openings identified by Nielsen, that she had failed to establish a prima facie case of discrimination with respect to the engineering placements identified because she had failed to provide any probative evidence that she was qualified for the positions or tending to show that Ford's articulated reasons for not promoting her were pretextual. This timely appeal followed.
 
 II.
 
 7
 On appeal, Nielsen asserts for the first time that the district court erred in applying the four-step formula of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and argues that this case should be analyzed under the Supreme Court's recent holding in Watson v. Forth Worth Bank and Trust Co., 108 S.Ct. 2777 (1988). In that case, the Court held that the disparate impact analysis may be applied to subjective or discretionary employment practices in appropriate cases. Id. at 2786-87.
 
 
 8
 However, this case is not an appropriate case for application of disparate impact analysis. In the district court, Nielsen alleged disparate treatment, and this case has been treated by both parties from its inception as a disparate treatment case. Nielsen repeatedly alleges in her complaints that she was treated disparately by Ford and has characterized Ford's conduct from the outset as being disparate treatment. She has never asserted that particular subjective employment decisions or practices have had a disparate impact upon women, and there is nothing in the record indicating that the district court ever denied her the opportunity to make such a claim.
 
 
 9
 Moreover, even if this case is considered from a disparate impact viewpoint, Nielsen has made no attempt to establish a prima facie case of discriminatory promotion practices. She has offered no statistical evidence that would support the application of the disparate impact analysis to her claims. Simply stated, this case has been tried to this point as a disparate treatment case, and Nielsen may not change her theory on appeal.
 
 
 10
 Nielsen contends that she received disparate treatment because she was denied the opportunity to work overtime while similarly situated males were provided that opportunity. However, the majority of these allegations were resolved in the first litigation. The district court correctly concluded that any discrimination regarding overtime occurring before September 15, 1984, has been actually litigated between the parties, and, therefore, the claims are barred by res judicata and collateral estoppel.
 
 
 11
 With regard to any discrimination that allegedly occurred after September 15, 1984, Nielsen generally alleges in her complaint that she was treated differently from similarly situated males. She has submitted departmental overtime summaries which do suggest disparate treatment. However, Ford has submitted affidavits and deposition testimony of Nielsen's supervisors during the relevant time periods, and both individuals claim that they allocate overtime solely on the basis of need, and that no such need existed for Nielsen's work. In response, Nielsen provides no evidence whatsoever suggesting that the proffered reasons are pretextual. Accordingly, the district court properly entered summary judgment on her overtime claim.
 
 
 12
 Nielsen re-alleges in her complaint that she was improperly classified by Ford in 1981 and that she was denied a promotion and/or classification to an engineering position where an advancement would be possible. However, this issue was the subject of the prior litigation between these parties, and, therefore, relitigation of that issue is barred.
 
 
 13
 With regard to Nielsen's contention that the district court improperly dismissed her claims of failure to promote her to a salary grade 7 engineering or to reclassify her to a salary grade 6 engineering classification, Nielsen contends that she has raised genuine issues of fact sufficient to avoid summary judgment. However, Nielsen offers no evidence with respect to any specific engineering position identified in either her deposition or her answer to Ford's motion for summary judgment. Instead, she makes general, unsupported assertions that males placed into the identified openings were no better qualified than she. However, she does not indicate why the district court's conclusions to the contrary are in error, and she presents no specific facts indicating which positions were available during a specific time period.
 
 
 14
 A review of the record shows that while Nielsen is a good employee, she is clearly not as qualified as the individuals selected by Ford for the identified positions. The district court identified six different groups of individuals who had filled job openings identified by Nielsen. After identifying the different groups, the district court concluded that Nielsen was not similarly situated with any of the individuals. We agree.
 
 
 15
 One group of individuals were promoted into engineering positions with the salary grade 8, which Nielsen has never asserted she was qualified to perform. A second group of individuals all have the equivalent or higher of a bachelor of arts or sciences degree, and thus have greater educational qualifications than Nielsen. The third group of individuals were promoted into nonengineering classifications, a position to which Nielsen has never asserted any desire. The fourth group of individuals were promoted in the time period between January 1982 and March 1983, which is before Nielsen ever requested a promotion. The fifth group of individuals also had qualifications superior to Nielsen in that they generally had superior educational qualifications or significantly greater experience in the engineering field. Finally, the sixth group of individuals either had superior expertise in the type of computer equipment and technology being used at the plant where Nielsen works or were entitled to seniority because they previously held the position in question prior to being removed or demoted as part of a reduction in force. Thus, Nielsen is unable to establish that the district court erred in its conclusion that she was not similarly situated nor as qualified as individuals who were allegedly promoted ahead of her.
 
 
 16
 Moreover, assuming, arguendo, that Nielsen could establish that she is similarly situated, she is unable to demonstrate that the nondiscriminatory reasons given by Ford for its actions were pretextual. It is clear from the record that all of the placements in question were consistent with company personnel policy regarding promotion and restoration from layoff, or were made to fill specific, legitimate business needs. Nielsen simply alleges that Ford's reasons were pretextual and that the real reason she was denied a promotion and/or reclassification was because she filed a civil rights complaint. However, she is unable to establish that Ford's business reasons were untrue or invalid, and she provides no evidence whatsoever to suggest that the business justifications articulated were pretextual.
 
 
 17
 Nielsen also argues the district court erroneously denied her Title VII claim for retaliation. See 42 U.S.C. Sec. 2000e-3(a). To establish a prima facie case of retaliation, a "plaintiff must establish: (1) that he was engaged in activity protected by Title VII; (2) that he was a subject of adverse employment action; and (3) that there exists a causal link between his protected activity and the adverse action of his employer." Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 375 (6th Cir.1984), cert. denied, 478 U.S. 1006 (1986).
 
 
 18
 Beyond her general allegations of retaliation, Nielsen has failed to provide any evidence that would suggest a causal connection between the filing of her prior action and the alleged discrimination occurring afterward. As we have previously noted, every adverse employment decision of which Nielsen complains has been supported by legitimate business justifications by Ford. Nielsen predicates her discrimination upon general nuances of the working environment, on vague references of a tendency to exclude her from departmental meetings, and by downgrading her evaluations. However, while the record does tend to suggest that Nielsen does not work well with some of her peers and superiors, there is simply no evidence that she suffered any adverse employment decision because of this relationship. Accordingly, the district court properly entered summary judgment on this claim.
 
 
 19
 Nielsen's final argument is that the district court improperly denied her discovery so that she could establish that Ford's reasons justifying all of its employment decisions were pretextual. It is well established in this court that the scope of discovery is within the sound and broad discretion of the trial court. See Ghandi v. Police Dept. of the City of Detroit, 747 F.2d 338, 354 (6th Cir.1984), cert. denied, 108 S.Ct. 774 (1988). An order limiting or denying discovery will not be the cause for reversal unless an abuse of discretion resulting in substantial prejudice is shown. Id. at 354. A trial court abuses its discretion with respect to discovery rulings if its actions are "clearly unreasonable, arbitrary or fanciful." Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 399 (D.C.Cir.1984).
 
 
 20
 A review of the record indicates that there is only one order of the district court regarding discovery which can be construed as adverse to Nielsen. On May 2, 1988, the district court entered an order denying Nielsen's motion to reopen discovery. She had filed the motion on April 20, 1988, approximately one month after Ford filed its renewed motion for summary judgment and more than one year after discovery had closed, requesting discovery be reopened primarily because she was unprepared to respond to the arguments in Ford's motion and the information contained in the accompanying affidavits. The district court denied her motion, noting that she had not shown exactly why it was necessary to reopen discovery in light of the time this case had been on the docket.
 
 
 21
 Nielsen alleges that the district court was in error because she was proceeding pro se at the time, and, therefore, the court should have been more understanding with regard to her difficulty in responding to the information provided by Ford. However, she has not indicated why the court's order was clearly unreasonable or arbitrary. On the contrary, the record reflects that the district court was more than fair in allowing her a chance to show discrimination. Simply stated, plaintiff has not shown why it was unreasonable or unfair, considering the length of time discovery had already been closed and the length of time that had passed since these complaints were filed, for the district court to put an end to this prolonged litigation. The district court was not required to prepare her case for her, and it did not abuse its discretion when it decided that this protracted litigation should come to an end.
 
 III.
 
 22
 This appeal presents the culmination of lengthy litigation between Nielsen and Ford. We have previously considered her initial complaint and upheld the district court's conclusions following a bench trial that Nielsen had not been subject to any adverse employment decision in violation of Title VII. Generally, the majority of Nielsen's allegations are simply a reiteration of claims that were unsuccessfully litigated in the first action. With regard to the issues not previously litigated, Nielsen has again failed to establish a prima facie case of discrimination. Accordingly, the judgment of the district court is AFFIRMED.